IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:17-cr-00074(2) |
| | : | |
|      Plaintiff, | : | Judge Susan J. Dlott |
| | : | |
|   v. | : | **ORDER DENYING DEFENDANT** |
| | : | **DAMONDO BLACK'S MOTION TO** |
| DAMONDO BLACK, | : | **RECONSIDER** |
| | : | |
|      Defendant. | : | |

Defendant Damondo Black[1] is charged with conspiracy to distribute narcotics (marijuana, cocaine, and heroin) in violation of 21 U.S.C. § 846 (Count 1) and possession of a firearm in connection therewith in violation of 18 U.S.C. §§ 924(c)(1) and (2) (Count 2), as well as possession of a firearm by a prohibited person in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 2 (Count 5). (Doc. 1.) This matter is before the Court on Defendant's Motion for Reconsideration of Magistrate's[2] Order Denying Motion to Suppress, (Doc. 133), and the United States' response. (Doc. 134.) For the reasons that follow, Defendant's Motion is hereby **DENIED**.

## I. BACKGROUND

On April 10, 2017, a Special Agent with the Bureau of Alcohol, Tobacco, and Firearms prepared and presented an affidavit to a United States Magistrate Judge for a search warrant for three Cincinnati properties, including 6581 Golfway Drive. (Doc. 106-1 at PageID 304, 306 (¶

---

[1] Because a separate motion to suppress filed by Co-Defendant Jerry Black, Damondo's brother, is relevant to this matter, the Court will use full names to avoid confusion.
[2] Despite the title of Defendant's Motion for Reconsideration, it should be noted that this Court—not the Magistrate Judge—denied Defendant Damondo Black's Motion to Suppress. (Doc. 122.)

1).)[3]  The search warrant for the Golfway Drive property, believed to be Defendant Damondo

Black's residence, was executed in the early morning hours of April 11, 2017.  (*Id.* at PageID

306 (¶ 1(c)); *see* Doc. 106-2 at PageID 388 (¶ 70)[4].)  Later that day, another Special Agent with

ATF prepared and presented a separate affidavit for a warrant to search a fourth Cincinnati

property, 1746 Dale Street, Apartment 3.  (*See* Doc. 106-2 at PageID 351, 352–94.)[5]

Defendant Damondo Black moved to suppress evidence seized from both the Golfway

Drive and Dale Street addresses.  The Court conducted a hearing on Defendant Damondo

Black's Motion to Suppress on November 21, 2017, and—after careful consideration—denied

the Motion by written Order on January 17, 2018.  (Doc. 122.)  Defendant now moves for

Reconsideration of that Order.  (Doc. 133.)

## II.     RELATED PROCEDURAL MATTERS

In addition to Defendant Damondo Black, four others are charged in the instant

indictment:  Ricardo Maxwell, Darrell Allsbrook, Samuel Washington, and Damondo Black's

brother, Jerry Black.  (Doc. 1.)  Defendant Jerry Black previously moved to suppress evidence

seized from another property—1821 Tuxworth Avenue, #1—not at issue in the instant motion.

(Doc. 93.)  The affidavit supporting the Tuxworth Avenue search warrant ("Tuxworth Avenue

Affidavit") was prepared by Cincinnati Police Officer Maloney and presented to a Hamilton

County, Ohio Municipal Judge on February 19, 2016.  *See* Doc. 93-1.  In responding to

Defendant Jerry Black's Motion to Suppress, the United States maintained that Defendant Jerry

---

[3] Doc. 106-1 is a redacted version of the affidavit in support of the search warrant filed under seal in *United States v. Search Warrant*, No. 1:17-mj-00224 (hereinafter "Golfway Drive Affidavit").  As necessary, the Court will cite to the sealed, rather than the publicly-accessible, version of the affidavit for purposes of resolving Defendant's Motion.
[4] Paragraph 70 recites that a search warrant was executed at 6581 Goldway (and not Golfway) Drive, which the Court presumes to be a typographical error.
[5] Doc. 106-2 is a redacted version of the affidavit in support of the search warrant filed under seal in *United States v. Search Warrant*, No. 1:17-mj-00225 (hereinafter "Dale Street Affidavit").  As with the Golfway Drive Affidavit, the Court will cite to the sealed, rather than the publicly-accessible, version of the Application for purposes of resolving Defendant's Motion.

Black did not live at the Tuxworth Avenue address so he lacked standing to contest the issuance of the Tuxworth Avenue search warrant.  (Doc. 99 at PageID 266–68.)  The Court conducted a hearing on Defendant Jerry Black's Motion to Suppress on November 20, 2017, and—finding the standing issue dispositive—denied Defendant Jerry Black's Motion by written Order on December 20, 2017.  (Doc. 115.)

Defendant Jerry Black then filed a Motion for Reconsideration of the Court's December 20, 2017 Order.  (Doc. 121.)  In his Motion for Reconsideration, Defendant Jerry Black claimed that the United States should be estopped from arguing that he lacked standing to contest the search warrant for the Tuxworth Avenue property because the same Officer Maloney who provided the Tuxworth Avenue Affidavit swore in another affidavit before the same Hamilton County Municipal Judge—for a search warrant not at issue here—that the Tuxworth Avenue address was in fact Jerry Black's residence.  (Doc. 128 at PageID 508–511.)  This Court agreed that the Government should be estopped from taking inconsistent positions that Defendant Jerry Black resides at the Tuxworth Avenue address (in seeking a search warrant) but does **not** reside at the Tuxworth Avenue address (when contesting Jerry Black's Motion to Suppress evidence found there).  (Doc. 128.)  The Court then examined the affidavit underlying the Tuxworth Avenue search warrant, found it lacking, and granted Defendant Jerry Black's Motion for Reconsideration.  *Id.*  Defendant Damondo Black now asks this Court to reconsider its Order Denying Defendant Damondo Black's Motion to Suppress.  (Doc. 133.)

### III.    STANDARD OF LAW

### A.  Probable Cause

In determining whether a search warrant is supported by probable cause, a court may consider only the "four-corners of the affidavit."  *United States v. Frazier*, 423 F.3d 526, 531

(6th Cir. 2005) (citing *Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 565 n.8 (1971)). Thus, "information known to the officer but not conveyed to the magistrate is irrelevant." *United States v. Abernathy*, 843 F.3d 243, 249 (6th Cir. 2016) (quoting *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010) (citation omitted)).

An affidavit must show a "likelihood of two things" to establish probable cause for a search. *Id.* (internal quotations and citations omitted). They are: "first, that the items sought are seizable by virtue of being connected with criminal activity; and second, that the items will be found in the place to be searched." *Id.* (citing *United States v. Church*, 823 F.3d 351, 355 (6th Cir. 2016) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 555 n.6 (1978))) (internal quotations omitted). "[E]vidence of a crime" is a critical component of a search warrant. *Armstrong v. City of Melvindale*, 432 F.3d 695, 700 (6th Cir. 2006) (citing *Zurcher*). To this end, an applicant for a search warrant must recite the statutory violation for which the warrant is requested on the face of the warrant or in the affidavit in support. *See United States v. Abboud*, 438 F.3d 554, 569–71 (6th Cir. 2006).

Probable cause exists when "common-sense" suggests a "fair probability" that contraband or evidence of a crime "will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "[T]he affidavit supporting the search warrant must demonstrate a nexus between the evidence sought and the place to be searched." *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016) (citing *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc)). "The connection between the residence and the evidence of criminal activity must be specific and concrete, not 'vague' or 'generalized.'" *Id.* (quoting *Carpenter*, 360 F.3d at 595).

Probable cause "is not a high bar." *Kaley v. United States*, 134 S. Ct. 1090, 1103 (2014). "It requires only the kind of fair probability on which reasonable and prudent [people,] not legal

technicians, act." *Id.* (citing *Florida v. Harris*, 133 S. Ct. 1050, 1055 (2013) (quoting *Gates*, 462 U.S. at 231, 238)) (internal quotations omitted) (alteration in original).  A reviewing court should give "great deference" to a magistrate judge's probable cause determination and reverse only if it was "arbitrarily" made.  *United States v. Frechette*, 583 F.3d 374, 379 (6th Cir. 2009).  It should not engage in "line-by-line scrutiny of the warrant application's affidavit."  *United States v. Williams*, 544 F.3d 683, 686 (6th Cir. 2008).  The affidavit should be judged "on the adequacy of what it **does** contain, not on what it **lacks**, or what a critic might say **should have been added**." *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000) (emphases added).

*Gates* established its "totality-of-the-circumstances" analysis against the backdrop of a supporting affidavit based on a confidential informant's tip.  "Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability."  462 U.S. at 232 (quoting *Adams v. Williams*, 407 U.S. 143, 147 (1972).)  An informant's reliability, veracity, or basis of knowledge are relevant considerations, but should not be applied rigidly.  *Id.* at 232–33; *see United States v. Thomas*, 605 F.3d 300, 307 (6th Cir. 2010) ("When an affidavit relies on hearsay information from a confidential informant, the judicial officer (and reviewing court) must consider the veracity, reliability, and basis of knowledge for that information as part of the totality-of-the-circumstances review."); *see also United States v. King*, 227 F.3d 732, 740 (6th Cir. 2000) (Veracity, reliability, and basis of knowledge of the tip "are relative where the strength of one factor may compensate for the deficiency of another." (citing *Gates*, 462 U.S. at 230, 238–39)).

## B. Good-Faith Exception to Exclusionary Rule

"When evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule usually precludes its use in a criminal proceeding against the victim

of the illegal search and seizure." *Illinois v. Krull*, 480 U.S. 340, 347 (1987). But courts typically should *not* suppress "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant." *United States v. Leon*, 468 U.S. 897, 922 (1984). The four specific situations in which an officer's reliance cannot be considered "objectively reasonable" are: (1) when the warrant is issued on the basis of an affidavit that an affiant knows—or is reckless in not knowing—contains false information; (2) when the issuing magistrate abandons his or her neutral and detached role and serves as a rubber stamp for police activities; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; and (4) when the warrant is so facially deficient that it cannot reasonably be presumed to be valid. *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005) (citing *Leon*).

## IV.    ANALYSIS

Defendant Damondo Black attempts a second bite of the apple by: (1) attacking four selected paragraphs (26, 54, 60, and 68) from the voluminous Golfway Drive and Dale Street Affidavits; and (2) alleging this Court's Order invalidating the Tuxworth Avenue warrant is inconsistent with this Court's Order upholding the Golfway Drive and Dale Street warrants. The Court will address each contention in order.

### A. Golfway Drive Affidavit, Paragraph 26

Defendant Damondo Black contends that a traffic stop in which he was found in possession of only a personal use amount of marijuana "hardly constitutes the collection of probable cause for a search warrant." (Doc. 133 at PageID 558.) However, Paragraph 26 of the Golfway Drive Affidavit provides, in pertinent part:

> On February 19, 2016, Agents/Officers observed a grey BMW with Ohio license plate GQE7512 leaving 1821 Tuxworth being

driven by Damondo BLACK. A traffic stopped ensued and evidence was collected that established probable cause for a search warrant. Prior to serving the warrant, Agents/Officers observed a black SUV pull to the rear of 1821 Tuxworth Avenue. Agents/Officers stopped the vehicle for a traffic violation in front of 1784 Esmonde Street, Cincinnati, Ohio and found Jerry BLACK to be the driver and only occupant of the vehicle. Police recovered approximately 19,500 grams of marijuana during the stop.

While Defendant Damondo Black is quick to point out that he had only a "personal use" amount of marijuana in the grey BMW during the traffic stop of his vehicle, he ignores the fact that his brother and alleged co-conspirator had almost 20 kilograms of marijuana in his vehicle. Furthermore, Defendant relies on a quote from this Court's analysis of the three-page state court Tuxworth Avenue Affidavit as though it were made about the far more thorough Golfway Drive Affidavit. The Tuxworth Avenue Affidavit made no mention of the black SUV, the related traffic stop, or the 19,500 grams of marijuana. Rather, the Tuxworth Avenue Affidavit merely mentioned the grey BMW and the personal use amount contained therein. As discussed at length in the Court's Order denying Defendant Damondo Black's Motion to Suppress, the Golfway Drive and Dale Street search warrants—viewed under the totality of the circumstances—are supported by probable cause. This argument does not change that analysis.

### B. Golfway Drive Affidavit, Paragraph 54[6]

Paragraph 54-2 provides:

> On November 8–11, 2016, officers traveled to Los Angeles, CA to conduct an interview with Darrell ALLSBROOK about his involvement in FDD drug trafficking operations. ALLSBROOK stated that he had shipped marijuana from California to Damondo BLACK at his address on Wilson Avenue in Cincinnati. ALLSBROOK also said he had sent marijuana to various other people in Cincinnati as well [as] other states; such as, Alabama.

---

[6] It should be noted that the Golfway Drive Affidavit contains two paragraphs numbered "54." One paragraph 54 begins on page 29, and then the next paragraph (beginning on page 30 of the Golfway Drive Affidavit) is also numbered "54." Thus, the Court will use "paragraph 54-1" to refer to the paragraph 54 that begins on page 29 and will use "paragraph 54-2" to indicate the paragraph 54 that begins on page 30.

Defendant Damondo Black contends (without any supporting evidence) that Allsbrook did not ship marijuana from California to Defendant Damondo Black at his Wilson Avenue address.  Counsel for Damondo Black claims that he "will have issued" subpoenas to the United States Postal Service, United Parcel Service and FedEx to show a lack of deliveries from California to the Wilson Avenue address from March through November 2016.  (Doc. 133 at PageID 558.)

There are three obvious problems with this contention.  First, as Defendant Damondo Black concedes in his motion, other companies ship packages from California to Ohio.  Thus, simply showing that these three companies did not ship a package for Co-Defendant Allsbrook is insufficient to establish that Allsbrook's statement is false.  Second, the Golfway Drive Affidavit at paragraph 54-1 (emphasis added) states, "ALLSBROOK admitted that he has **in the past** sent over $20K+ worth of high grade marijuana to Damondo BLACK back in Cincinnati."  Indeed, Allsbrook admits shipping marijuana from California to various people and places in Cincinnati and elsewhere.  Thus, establishing that no packages shipped during the very narrow time period proposed by counsel would not establish that Allsbrook's statements are false.  Finally, even if Defendant Damondo Black could establish now—more than a year after the warrants were executed—that one of Allsbrook's statements is false, it would not significantly diminish the abundance of other evidence contained in the search warrant.   As discussed at length in the Court's Order denying Defendant Damondo Black's Motion to Suppress, the Golfway Drive and Dale Street search warrants—viewed under the totality of the circumstances—are supported by probable cause.  This argument does not change that analysis.

### C.  Dale Street Affidavit, Paragraph 60

In a two sentence argument, Defendant Damondo Black alleges that ATF 5's statement to law enforcement that "'Mondo' has a stash house in the area of Grafton Rd. and Dale Rd." is insufficiently specific to support a search warrant for 1746 Dale Street, Apartment 3.  (Doc. 133 at PageID 559.)  However, paragraph 66 of the Dale Street Affidavit indicates that ATF 7 told officers that Defendant Damondo Black kept more than one "stash house," including one on Dale Street.  ATF 7 positively identified 1746 Dale Street, top left apartment as the Dale Street "stash house," provided additional details regarding the property, and stated s/he had seen approximately eight pounds of marijuana and two particular handguns in that specific apartment. (Dale Street Affidavit at PageID 35–36.)  As discussed at length in the Court's Order denying Defendant Damondo Black's Motion to Suppress, the Dale Street search warrant—viewed under the totality of the circumstances—is supported by probable cause.  This argument does not change that analysis.

### D.  Golfway Drive and Dale Street Affidavits, Paragraph 68

In Paragraph 68 of the Golfway Drive and Dale Street Affidavits, ATF 7 discusses a "recent" trip to California in which Defendant Damondo Black accompanies others.  In addition, ATF 7 indicates that s/he saw Defendant Jerry Black at the Dale Street address.  Defendant Damondo Black claims that those portions of paragraph 68 cannot be accurate because: (1) Defendant Damondo Black posted comments on Facebook from Cincinnati while the others were in California posting their own photos to social media, (*see* Doc. 133, Exhibit A); and (2) Defendant Jerry Black was in an Ohio prison during the relevant time period.  These arguments are also without merit.

First, there is no affidavit or evidence in the record indicating that any of the Facebook posts attached to Defendant's Motion for Reconsideration are authentic. The Court takes judicial notice that anyone can post to Facebook from any device using a subscriber's log in credentials. Thus, Defendant Damondo Black could have posted his comments from California as though he were not in California. Alternatively, he could have asked another person to log in as him to post comments from Cincinnati even though he was in California. Finally, photos posted to Facebook are dated the day they are posted rather than the day they are taken. The photo purporting to be "Mondobottombunk Ganstamustfdd" in Covington, Kentucky on March 24, 2017, could have been taken previously and simply posted to Facebook on March 24, 2017.

Second, while Defendant Jerry Black's incarceration record indicates he was serving state time from August 2, 2016 through August 20, 2017, many of the events discussed in the affidavits occurred prior to August 2, 2016. In addition, it appears that Defendant Jerry Black was given a "vocational furlough" beginning in March 2017. (Doc. 133-2 at PageID 574.) As paragraph 68 does not provide the exact date on which ATF 7 saw Defendant Jerry Black at the Dale Street address, the exhibits attached to Defendant Damondo Black's Motion for Reconsideration do not persuade the Court that ATF 7's statements are false.

Finally, even if Defendant Damondo Black could establish now—more than a year after the warrants were executed—that ATF 7's statements are false in part, it would not diminish the executing officers' objectively reasonable reliance on a later invalidated search warrant. As discussed at length in the Court's Order denying Defendant Damondo Black's Motion to Suppress, the Golfway Drive and Dale Street search warrants—viewed under the totality of the circumstances—are supported by probable cause. This argument does not change that analysis.

### E. The Order Denying Defendant Damondo Black's Motion to Suppress is Consistent with the Order Reconsidering and Granting Defendant Jerry Black's Motion to Suppress

Defendant Damondo Black contends that this Court's Order Denying Defendant Damondo Black's Motion to Suppress, (Doc. 122), is inconsistent with this Court's Order Reconsidering and Granting Defendant Jerry Black's Motion to Suppress, (Doc. 128). (Doc. 133). The Court disagrees.

Defendant Jerry Black sought to suppress evidence seized from the Tuxworth Avenue property. In evaluating the Tuxworth Avenue search, the Court must analyze the affidavit underlying the Tuxworth Avenue search warrant. *See, e.g., United States v. Abernathy*, 843 F.3d 243, 249 (6th Cir. 2016). The Tuxworth Avenue Affidavit contains little detail, but it did identify Defendant Damondo Black as having prior drug-related criminal convictions. (Doc. 93-1 at PageID 252.) It did not mention a trash pull at any address or identify the Tuxworth Avenue address as Damondo Black's residence. *See id.* at 251–52. In suppressing evidence seized based on the Tuxworth Avenue Affidavit, this Court stated, "[O]fficers merely observed [Damondo Black] enter and exit the residence, drive away, and enter and exit the residence again. While he was found in possession of *personal use* marijuana during the traffic stop in-between, this discovery is hardly indicative of marijuana *trafficking*." (Doc. 128 at PageID 518 (emphasis in original).) In a footnote to that statement, the Court mentioned, "*But* even if Tuxworth had been alleged to be Damondo Black's residence—and thus the residence of a known drug dealer—that fact, '*standing alone*,' is not enough to justify a warrant." (*Id.* (emphasis added).) The Court, in that footnote, simply indicated that the government does not have probable cause to enter a person's residence based solely on the fact that the person in question has a prior drug

conviction.  *See, e.g., United States v. Brown*, 828 F.3d 375, 383 ("We have never held,
however, that a suspect's 'status as a drug dealer, standing alone, gives rise to a fair probability
that drugs will be found in his home.'").  The Court reaffirms this statement.

In contrast, Defendant Damondo Black sought to suppress evidence seized from the
Golfway Drive and Dale Street addresses.  The affidavits underlying those search warrants are
extensive and detail a large and ongoing drug trafficking operation from which this Court
concluded that Defendant Damondo Black is a "major player."  (Doc. 122 at PageID 484.)

In his Motion to Suppress, Defendant Damondo Black argued a lack of nexus between
any purported drug activity and the Golfway Drive property.  (*See* Doc. 107 at PageID 396–98.)
This Court denied his contention on two distinct bases.  First, the marijuana-positive trash pull
from the Golfway Drive property established a nexus between the drug activity and the Golfway
Drive address.  (Doc. 122 at PageID 481–82.)  Second, even if no nexus had existed, the affidavit
provided "abundant evidence" that Defendant Damondo Black was a "major player" in a large
and ongoing drug trafficking operation.  (*Id.* at PageID 482.)  The Court, quoting *Brown*, 828
F.3d at 383, n. 2, concluded that the affidavit underlying the Golfway Drive search warrant
provided sufficient, specific evidence to identify this case as "distinct from the typical drug
trafficking case" because "the affidavits did not just establish that the defendants were drug
dealers, but contained overwhelming evidence that the defendants were **major players in a
large, ongoing drug trafficking operation**."  (*Id.*)  In fact, after providing two pages of specific
examples from the affidavit linking Damondo Black to extensive drug activity, the Court
concluded:

> By all accounts, Defendant [Damondo Black] has the trappings of
> a general directing illegal drug trading across state lines, not a foot
> soldier following commands.  Disregarding the August 2016 trash
> pull, a nexus is provided simply by virtue of Defendant's "major

player" rank. Accordingly, the Court concludes that probable cause supported issuance of the search warrant for 6581 Golfway Drive.

(*Id.*) The Court reaffirms this statement as well.

The Court's decisions granting the Tuxworth Avenue Motion to Suppress and denying the Golfway Drive Motion to Suppress differ because the affidavits underlying the search warrants differ dramatically. The Tuxworth Avenue Affidavit provided evidence that Defendant Damondo Black had previous drug convictions and left the Tuxworth Avenue address with a personal use amount of marijuana in his car. (Doc. 93-1 at PageID 252.) The Golfway Drive Affidavit, in sharp contrast, provided substantial evidence of a large and ongoing drug trafficking operation in which Defendant Damondo Black is a "major player."[7] Because the affidavits differ, the analysis of those affidavits must also differ. As discussed at length in the Court's Order denying Defendant Damondo Black's Motion to Suppress, the Golfway Drive and Dale Street search warrants—viewed under the totality of the circumstances—are supported by probable cause.

## V. CONCLUSION

For the reasons set forth above, Defendant Damondo Black's Motion for Reconsideration (Doc. 133) is **DENIED**.

**IT IS SO ORDERED**.

Dated: April 4, 2018                                    S/Susan J. Dlott
                                                        Judge Susan J. Dlott
                                                        United States District Court

---

[7] Defendant Damondo Black argues that—as second-in-command to his brother, Jerry Black—"Jerry Black would necessarily have to have at least the same kingpin status." (Doc. 133 at PageID 563.) After reviewing the affidavits underlying the Reading, Warsaw, Golfway, and Dale Street search warrants, the Court agrees. However, in evaluating a motion to suppress evidence seized from the Tuxworth Avenue property, the Court must evaluate the affidavit underlying the Tuxworth Avenue search warrant. *See, e.g., United States v. Abernathy*, 843 F.3d 243, 249 (6th Cir. 2016). The Tuxworth Avenue Affidavit did not contain the information necessary to reach that conclusion.